# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **COMPASS, INC.,**<br>5 E. College Dr. Ste 109<br>Arlington Heights, IL 60005<br><br><br>      Plaintiff<br><br>-against-<br><br>**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,**<br> 20 Massachusetts Ave NW,<br> Washington DC 20529<br><br>      Defendant<br><br> | Case No.<br><br>**COMPLAINT** |
| | |

## <u>COMPLAINT</u>

### INTRODUCTION

1.This is an action brought under the Administrative Procedure  Act seeking to have the United States Citizenship and Immigration Services' (USCIS) decision denying Compass, Inc.'s (Compass) petition in File Number WAC1917553501 to classify Rupendra Palakurthi as a specialty occupation worker  and change his nonimmigrant status to "H-1B", Exhibit A,  held unlawful and set aside.

2. As will be shown, the decision was arbitrary and capricious in that it failed to consider any of the evidence or arguments which the Compass submitted in support of employer-employee relationship.

3. Further, it is also arbitrary and capricious because its finding that Compass is not a "United States employer" is not supported by any evidence in the record.

**PLAINTIFF**

4. Compass is a global Information Technology firm providing innovative and robust end-to-end solutions. Its IT services, staffing and outsourcing solutions help its clients meet deadlines, quality, desired efficiency and budgetary targets. Compass has established itself as a strong IT company that provides end-to-end business solutions that leverage technology.   Compass has been providing technical support in software development, maintenance, IT resource and staffing solution to global IT and IT enabled service companies.   Compass's focus has been to provide scalable and cost-effective IT solutions using on-site and off-shore global delivery model. Compass provides business services, systems integration and managed services to Global 2000 companies, medium-sized businesses, and government organizations.  Compass Professionals leverage extensive industry and technology domain experience and flexible tools and methodologies to successfully deliver on time and on budget.  As business systems integrators, Compass aligns it clients' business processes and information systems to enable them to access the right information at the right time, empowering them to achieve their desired business results and create enterprise value. Exhibit B at 18.

**DEFENDANT**

5. The defendant, United States Citizenship and Immigration Services, is an agency of the United States government residing in the District of Columbia.

**JURISDICTION**

6. This being a civil action against the United States arising under the Administrative Procedure Act, 5 U.S.C. § 701, *et. seq.,* a law of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

## PROCEDURAL HISTORY

7. On April 11, 2019, Compass, filed a Petition for Nonimmigrant Worker (Form I-129), with USCIS, seeking to classify Mr. Palakurthi as a temporary worker in a specialty occupation under section 101(a)(l5)(H)(i)(b) of the Immigration and Nationality Act (INA), Exhibit A at 1, and, concurrently, change Mr. Palakurthi's nonimmigrant status in the U.S. from F-1 (foreign student) to H-1B (specialty occupation worker).Id. Its petition contained an offer to Mr. Palakurthi of a job of Embedded Systems Engineer. Exhibit B at 8.

8. This petition was supported by a copy of Compass's agreement with Mr. Palakurthi which provided in relevant part that:

> EMPLOYER[1] hereby engages EMPLOYEE[2] to perform software, programming and/or consulting services for EMPLOYER and other services, which are, assigned by EMPLOYER from time to time ("Services").
> 1.2. EMPLOYEE shall use his or his full-time, best efforts and skill to perform Services. EMPLOYEE shall not engage in any other employment or business activities, which require EMPLOYEE to devote or expend any material amount of time.
> 1.3. EMPLOYEE agrees to provide reports, time sheets and documentation concerning work activities and hours worked in a timely manner as requested by EMPLOYER. EMPLOYEE agrees o comply with all of EMPLOYER's policies, rules, regulations and procedures including, but not imited to instructions regarding relocation to or from a Customer site….
> 4… The Employment shall be terminable at will by either EMPLOYER or EMPLOYEE with or without cause, within the provisions of this contract. EMPLOYER retains the right to terminate EMPLOYEE at any time and for any reason… 6.1 … EMPLOYEE further agrees to relocate anywhere in the United States with no conditions attached and

---

[1] Compass

[2] Mr. Palakurthi.

report to the client site as directed by EMPLOYER Representative. Upon selection for a Client engagement, EMPLOYEE shall take the assignment and report to work at the Client location on the day and time indicated by the EMPOYER Representative.

Exhibit B at 70-76

9. The agreement also included an addendum providing (in relevant part) that:

(1) Rupendra Palakurthi ("Employee") acknowledges that he will work under the supervision and control of Compass, Inc. ("Employer") throughout the time he is employed by Employer regardless of the location where he physically provides services. Employee shall be appointed a supervisor which he will continue to report to throughout his employment unless advised in writing to the contrary.
(2) Employer will determine Employee's location and relocation assignments (i.e. where the Employee is to report to work);
(3) Where Employee works at a location not controlled by Employer, Employee will telephone his supervisor no less than once a week regarding his progress on the assigned work.
(4) The Employee acknowledges that although he may be called upon to assist the employees of companies other than Employer in his work, only the Employer, through the Employee's supervisor, has the right to control the work of the Employee on a day-to-day basis.
(5) Employee acknowledges that only the Employer has hired, and will pay, and have the ability to fire the Employee.
(6) Employee will be subject to regular progress/performance reviews from his supervisor based upon his work product and his continued employment and compensation level is dependent upon those reviews.
(7) The Employee will provide the employer such duties as the employer assigns, consistent with the occupation of Embedded Systems Engineer as that term Is understood in the industry. At this time, it is understood that those shall consist primarily of:

• Capture and define software requirements for Telematics Platform for Microcontroller (Renesas RH850
• Design and Development of AUTOSAR/Non-AUTOSAR BSW Modules of AUTOSAR R3./R4.x
• Generating automotive Real Time Operating Systems and Architecture (OSEK, AUTOSAR OS, etc.) Analyze Safety domain Electronic Control Unit (ECU), project customer requirements using DOORS, link and manage requirements in DOORS and maintain traceability across different modules of software architecture.
• Configuration and Integration of AUTOSAR Communication Stack, Memory Stack (FEE, EEPROM, NVM), System Stack, IOHWAbs, Gateway Stacks (CAN-CAN, CAN-LIN)
• Configuration Integration of 3rd party AUTOSAR (Microcontroller Abstraction Layer) MCAL Drivers/AUTOSAR OS to Non-AUTOSAR BSW + Application
• Design develop and debug integration of individual functions into the control unit.

• Implementation of the UDS Diagnostic protocol based on the ISO 14229-1 UDS standard with requirements as per the AUTOSAR standard specification
• On-chip debugging using Lauterbach Debugger tools (Trace32) on Renesas RH850, Freescale 560 Microprocessors.
• Resolve system and subsystem issues as they arise with respect to specific customer requirements. Additionally, run scripts to generate memory utilization of software modules.
• Integration of Safety domain ECU project, release software and assist with the software architecture using Rhapsody.
• Migration on Telematics Platforms fundamental architecture of a separate Vehicle Microprocessor (Vue) and NAD (Network Access Device), and the communication links
• Update/Maintain software source code tree in Git/Gerrit.
• Create open points, change requests in JIRA.
• Work on Internally Developed tools on different customer projects and fix the issues with tools

Exhibit B at77

Id. at 77-78.

10. The petition also included the agreement of Mr. Palakurthi that "By my signature below, I acknowledge, understand, accept and agree to comply with the information contained in the Employee Handbook provided to me by COMPASS INC." Id. at 100.

11. This Employee Handbook included various provisions by which Compass exercised its right to control Mr. Palakurthi's work, including a dress code, working hours and provisions for regular performance review. ,Id. at 101-106.

12. It also included an Organizational Chart showing that Mr. Palakurthi worked under the supervision of Compass employees. Id. at 108.

13. It further included a sample performance review sheet used by Compass to review the work of its employees. Id. at 109-111.

14. The petition was furthermore supported by a letter from Sasken, Inc., the company to whom Compass proposed to provide Mr. Palakurthi's services, stating that:

Mr. Rupendra Chowdary Palakurthi is not an employee of Sasken Technologies Limited or Continental Automotive System. His employer is Compass, Inc. shall

undertake responsibility such as assigning, managing, and controlling his work, supervision, performance evaluation, payroll, hiring, firing, and any additional employee benefits according to relevant federal and/or state law regulations etc.

Id. at 83.

15. Also included was a "Master's Service Agreement" between Compass and Sasken

Technologies Limited (Sasken) pursuant to the terms of which Compass (designated as

"Consultant" therei provided Sasken with certain services and which provided, in relevant

part that:

> Consultant shall perform the Services hereunder as an independent Consultant and nothing contained in terms of this Agreement shall be interpreted as establishing a relationship of joint venture, agency, partnership or employment between Parties. During term of Agreement or thereafter, neither Consultant, nor its employees as case may be shall represent to any third party as an employee of Sasken.

Exhibit B at 88.

16. On July 3, 2019, the USCIS issued a "Request For Evidence" (RFE) to Compass requesting,

among other things, further evidence that "The employer will maintain an employer-employee

relationship with the beneficiary by having the right to control the beneficiary's work, which may

include the ability to hire, fire, or supervise the beneficiary, for  the duration of the requested

validity period." Exhibit C at 3.

17. On approximately September 25, 2019, Compass responded to the RFE in relevant part with

the following additional evidence of its employer-employee relationship with Mr. Palakurthi:

   a.  Petitioner's Q & A Regarding Employer-Employee Relationship – Exhibit D at 91-92

   b.  A letter from Continental Automotive – Id. at 97

18. Compass's Q & A contained the following information regarding its relationship with Mr.

Palakurthi:

1. Does the petitioner[3] supervise the beneficiary[4] (off-site or on-site?) and provide him/ his training and/or counseling?
   *Ans: Yes, the beneficiary is supervised offsite.*
2. If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?
   *Ans: The beneficiary discusses status of the project weekly with the petitioner via Weekly status reports and Weekly Status calls. Feedback from client on regular basis if required. Petitioner also guides the beneficiary throughout the course of the project any issues need to be resolved.*
3. Does the petitioner have the right to control the work of the beneficiary on a day-to-day basis, if such control is required?
   *Answer: Yes. This is provided in the Addendum to the Employment Agreement between Petitioner and the beneficiary pertaining to Supervision and Control.*
4. Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
   *Answer: If the client requests it, we provide laptops, and associated software like specified Operating system, specified anti-virus software etc. However, in this case, the client will provide the required tools and instrumentalities needed for the beneficiary to perform the duties of employment.*
5. Does the petitioner hire, pay, determine the beneficiary's location and relocation assignments and have the ability to fire the beneficiary?
   *Answer: Yes. This is provided in the Addendum to the Employment Agreement between Petitioner and the beneficiary pertaining to Supervision and Control. Petitioner, and not the client, is paying the beneficiary. Copy of his latest payroll stubs are enclosed herewith.*
6. Does the petitioner evaluate the work-product of the beneficiary, i.e. progress/performance reviews?
   *Answer: Yes. Please see enclosed Beneficiary's latest performance report. Weekly progress is tracked using by weekly status emails and/or phone calls. Petitioner monitors progress because it, not client, is ultimately financially liable for the work done by the beneficiary, and therefore carries professional liability / Errors and Omissions insurance totaling up to$ 5M.*
7. Does the petitioner claim the beneficiary for tax purposes?
   *Answer: Yes, Compass, Inc. withholds of applicable employment tax from beneficiary's wages.*
8. Does the petitioner provide the beneficiary any type of employee benefits?
   *Answer: Yes, employee has the option to select the standard benefits. Beneficiary has opted for Medical Insurance with the petitioner.*
9. Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?
   *Answer: No.*

---

[3] The "petitioner" is Compass.

[4] The "beneficiary" is Mr. Palakurthi.

10. Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?

    *Answer: Compass provides consulting services to clients and the beneficiary will perform Configuration and integration of AUTOSAR Communication Stack, for the client other duties as described in 1-129 petition cover letter.*

11. Does the petitioner have the ability to control the manner and means in which the work product of the beneficiary is accomplished?

    *Answer: We do have the ability, as well as the legal right, to control the manner and means in which the work, and certainly could assign a technically skilled person to directly supervise the beneficiary if that was deemed beneficial. However, the beneficiary is sufficiently skilled to operate without direct technical supervision from our company under the general guidance, but not control, of the client.*

12. Does the petitioner determine the beneficiary's location and relocation assignments?

    *Answer: Yes. See enclosed Addendum of Supervision and Control to our contract with the beneficiary filed with the petition. Petitioner can pull the beneficiary out of the project with 2 weeks' notice to the client and place him at another project.*

13. Does the petitioner provide the employee with training?

    *Answer: Candidate is already quite skilled and qualified to do this job. However, if additional training is ever required to do his job better, Petitioner will reimburse justifiable training or certifications taken by beneficiary.*

14. Does the petitioner provide the employee with counseling?

    *Answer: Yes. If required, we will provide counseling and mentoring for the beneficiary to perform his job duties efficiently. We have ongoing counseling sessions each month on need basis.*

19. The letter from David Mason, Software Engineering Manager, Telematics Platform,

Continental Automotive Systems, stated that:

> I am authorized by Continental Automotive Systems (Continental) to make the following statements upon its behalf, and this is our signed statement confirming the work performed by Rupendra Palakurthi for Continental Automotive Systems as Embedded Systems Engineer at our office in 21440 W. Lake Cook Rd, Deer Park, IL 60010. This is pursuant to Continental's Agreement with Sasken Technologies Limited.
> The project is expected to continue until December,2022.
> Please note that, there is no separate Statement of Work (SOW) for this assignment. Sasken Engineers, including Rupendra Palakurthi are all working under the terms and conditions as specified in Master Service Agreement (MSA) between Continental and Sasken Technologies Limited.
> Continental Automotive Systems is not the employer of Rupendra Palakurthi and does not hold any right to control the work of Rupendra Palakurthi.
> Compass, Inc. is the employer of Rupendra Palakurthi and only Compass, Inc. will have the legal right to control the work of Rupendra Palakurthi as well as the right to assign Rupendra Palakurthi to this, or any, work site location, and has the legal right to control his activities. No other work site location is anticipated.

20. Further, Compass's response also contained the following explanation of its employer-
employee relationship with Mr. Palakurthi:

    a.    The petitioner has the full legal right to control the beneficiary

This evidence submitted herewith and already in the record shows the petitioner has the
legal right to control the beneficiary, whether it chooses (or needs) in practice to exercise
it or not. ": Employed, employed by the employer, or employment relationship means the
employment relationship as determined under the common law, under which the key
determinant is the putative employer's right to control the means and manner in which the
work is performed." "Determining Employer-Employee Relationship for Adjudication of
H-1B Petitions, Including Third-Party Site Placements; Additions to Officer's Field
Manual (AFM) Chapter 31.3(g)(15)[5](AFM Update AD 10-24)," Donald Neufeld,
Associate Director, USCIS Service Center Operations, HQ 70/6.2.8, January 8, 2010 at 2.

The petitioner certainly has such a right, in that it is provided under its agreement with the
beneficiary in which he expressly agrees (on the final page) that:

*(1)    Rupendra Palakurthi ("Employee") acknowledges that he will work under the
supervision and control of Compass, Inc. ("Employer") throughout the time he is
employed by Employer regardless of the location where he physically provides services.
Employee shall be appointed a supervisor which he will continue to report to throughout
his employment unless advised in writing to the contrary.*
*(2)    Employer will determine Employee's location and relocation assignments (i.e.
where the Employee is to report to work);*
*(3)    Where Employee works at a location not controlled by Employer, Employee will
telephone his supervisor no less than once a week regarding his progress on the assigned
work.*
*(4)    The Employee acknowledges that although he may be called upon to assist the
employees of companies other than Employer in his work, only the Employer, through the
Employee's supervisor, has the right to control the work of the Employee on a day-to-day
basis.*
*(5)    Employee acknowledges that only the Employer has hired, and will pay, and have
the ability to fire the Employee.*

---

[5] "AFM" refers to the USCIS' "Adjudicator's Field Manual", online at
https://www.uscis.gov/ilink/docView/AFM/HTML/AFM/0-0-0-1.html. The factors referred to in Mr. Neufeld's
memorandum are incorporated in the AFM at Chapter 31.3(g)(16). ""Policy material is binding on all USCIS
officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent
policy, either specifically or by application of more recent policy material. …. Examples of policy materials are: …
Field and Administrative Manuals." AFM § 3.4. Accordingly, all USCIS officers must judge the existence of an
employer-employee relationship between an H-1B petitioner and the beneficiary of that petition according to the
factors mentioned in the Neufeld memo.

Further, End client Continental Automotive has expressly acknowledged in its letter enclosed as Exhibit 12, that Compass is the employer of the beneficiary.

b.   The petitioner's legal right to control the beneficiary's work activities is dispositive of the existence of an employer-employee relationship regardless of who exercise actual control

As note 1 to Chapter 31.3 of the Adjudicator's Field Manual informs: "The right to control the beneficiary is different from actual control. *An employer may have the right to control the beneficiary's job-related duties and yet not exercise actual control over each function performed by that beneficiary. The employer-employee relationship hinges on the right to control the beneficiary.*" (emphasis added).[6]

*Accord* "Determining the Employer Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements", page 3 nt.6 (same). The continuing importance of this memorandum was recently reemphasized in the USCIS's Policy Memorandum regarding "Contracts and Itineraries Requirements for H-1B Petitions Involving Third-Party Worksites", which advised on p.3 of the same "To determine whether an employer-employee relationship exists, adjudicators should see the Employer-Employee Memo, published on January 8, 2010, for guidance.".

c.   In any event the petitioner is in fact exercising supervisory control over the beneficiary.

As the petitioner states in Answer #1 and #2 of its "Q&A" [Exhibit 10]:

1.   Does the petitioner supervise the beneficiary (off-site or on-site?) and provide him/ his training and/or counseling?

*Ans: Yes, the beneficiary is supervised offsite.*

2.    If the supervision is off-site, how does the petitioner maintain such supervision, i.e. weekly calls, reporting back to main office routinely, or site visits by the petitioner?

*Ans: The beneficiary discusses status of the project weekly with the petitioner via Weekly status reports and Weekly Status calls. Feedback from client on regular basis if required. Petitioner also guides the beneficiary throughout the course of the project any issues need to be resolved.*

Furthermore, the fact that the petitioner retains the right to ultimate control of the beneficiary's activities (see paragraphs 1-5 of the Addendum to the petitioner's contract

---

[6] "Policy material is binding on all USCIS officers and must be adhered to unless and until revised, rescinded or superseded by law, regulation or subsequent policy, either specifically or by application of more recent policy material. …Examples of policy materials are: Field and Administrative Manuals" AFR 3.4. Thus the AFM, being an administrative manual, is a policy material binding on all USCIS officers.

with the beneficiary) explains why the Internal Revenue Service has concluded, based upon common law principles, that companies such as petitioner which provide software consultants to provide services directly to their clients are their employers in fact. See Rev. Rul. 87-41, 1987-1 C.B. 296, 1987 WL 419174 (IRS RRU) Internal Revenue Service (I.R.S.) Revenue Ruling "EMPLOYMENT STATUS UNDER SECTION 530(D) OF THE REVENUE ACT OF 1978" Published: 1987, a copy of which is enclosed. This was the very same revenue ruling referred to by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992) as an example of the proper application of common-law principles to determine whether an employer-employee relationship existed, thus demonstrating conclusively that the Supreme Court itself consider such a relationship to exist in the instant situation.[7] A more detailed review of the standards established by the Neufeld memo and their application to the instant situation leads inexorably to the conclusion that the petitioner is the employer of the beneficiary.

B.     ALMOST ALL OF THE INDICIA OF AN EMPLOYER-EMPLOYEE RELATIONSHIP APPLIES TO THE INSTANT POSITION

In determining the existence of an employer-employee relationship the USCIS looks for guidance to the aforementioned memorandum of Associate Director Donald Neufeld in which he stated that "In considering whether or not there is a valid 'employer-employee relationship' for purposes of H-1B petition adjudication, USCIS must determine if the employer has a sufficient level of control over the employee. The petitioner must be able to establish that it has the right to control over when, where, and how the beneficiary performs the job and USCIS will consider 11 factors to make such a determination (with no one factor being decisive)." The enclosed "Petitioner's Q & A Regarding Employer-Employee Relationship" addresses each of these issues, and demonstrates that all but factors 4 & 9 indicate that an employer-employee relationship exists. Nothing in Mr. Neufeld's memo indicates that all of the relevant factors must be satisfied to establish a bona fide employer-employee relationship between the parties. Here the fact 9 of the 11 relevant factors are satisfied is highly compelling evidence of the existence of an employer-employee relationship.

Further, an additional 3 factors recently mentioned by the Service as indicia of an employee-employee relationship, also exist here.  See "Petitioner's Q & A Regarding Employer-Employee Relationship" items 12-14.

21. Nevertheless, on October 8, 2019, the USCIS issued a decision denying Compass's petition solely on the grounds that "there is insufficient evidence to establish the employer-employee relationship requirement necessary for the entire duration of the intended off-site employment.

---

[7] *Darden* favorably noted that the IRS set forth 20 factors as guides in determining whether an individual qualifies as a common-law "employee" in various tax law  contexts. *Id.* Virtually all of those factors also point to the instant beneficiary as being an employee of the petitioner. See enclosed **EXHIBIT 13**. Accordingly, nothing could be clearer then that the *Darden* court would've found an employer-employee relationship in this situation.

Therefore, you have not established that you will be a "United States employer" having an "employer-employee relationship" with the beneficiary as an H-1B temporary "employee." Exhibit A at 5.

22. Because the agency denied Compass's petition on Mr. Palakurthi's behalf, it also denied his application for change of nonimmigrant status to H-1B. Exhibit A at 1-2.

23. The USCIS's decision did not even acknowledge Compass's Q & A Regarding Employer-Employee Relationship.

24. Further it asserted that Compass's RFE response contained a "copy of the letter from the mid-vendor, (IDC Technologies, Inc.);"

25. In fact it did not.

26. Indeed, Compass has no idea who or what "IDC Technologies, Inc." is.

27. Although the USCIS mentioned the other documents submitted by Compass as evidence of its employer-employee relationship, it offered no explanation whatsoever as to why this did not establish this relationship.

28. It also failed to consider or respond to  in any way Compass's attorney's argument as to why the evidence it submitted established an employee relationship.

29. This action ensued.


**CAUSES OF ACTION**

I.   THE USCIS'S DECISION DENYING COMPASS'S PETITION TO CLASSIFY MR. PALAKURTHI AS AN H-1B NONIMMIGRANT SHOULD BE HELD UNLAWFUL AND SET ASIDE BECAUSE IT IS ARBITRARY AND CAPRICIOUS

   A.   THE USCIS DECISION WAS ARBITRARY AND CAPRICIOUS BECAUSE IT FAILED TO CONSIDER EVIDENCE CONTRADICTING ITS POSITION

30." An agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of § 706. *See, e.g., State Farm*, 463 U.S. at 43; *Comcast Corp. v. FCC*, 579 F.3d 1, 8, 388 U.S. App. D.C. 102 (D.C. Cir. 2009). " *Butte Cty. v. Hogen*, 392 U.S. App. D.C. 25, 29, 613 F.3d 190, 194 (2010)

31. This proposition may be deduced from case law applying the substantial evidence test, under which an agency cannot ignore evidence contradicting its position. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88, 71 S. Ct. 456, 95 L. Ed. 456 (1951)." Butte Cty, supra

32. "In determining  whether agency action is arbitrary or capricious," their application to the requirement of factual support the substantial evidence test and the arbitrary or capricious test are one and the same." *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys*., 745 F.2d 677, 683, 240 U.S. App. D.C. 301 (D.C. Cir. 1984); *accord Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 243, 390 U.S. App. D.C. 34 (D.C. Cir. 2008)." Butte Cty.

33. Here the agency did not even mention, much less consider, Petitioner's Q & A Regarding Employer-Employee Relationship (Q & A) even though it contained extensive evidence contradicting the USCIS' conclusion that Compass had an employer-employee relationship with Mr. Palakurthi.

34. In particular the Q & A addressed each of the 11 factors to make such a determination (with no one factor being decisive)." The enclosed "Petitioner's Q & A Regarding Employer-Employee Relationship" addresses each of these issues, and demonstrates that all but factors 4 & 9 indicate that an employer-employee relationship exists.  Further, the Q & A shows that an additional 3

factors subsequently mentioned by the USCIS as indicia of an employee-employee relationship, also exist here.

35. Therefore the Q & A is evidence contradicting the USCIS' conclusion that Compass lacked an employer-employee relationship, and therefore the USCIS' failure to even mention it, much less consider it, demonstrates that the agency's decision is not supported by substantial evidence, and so is arbitrary and capricious.

36. Likewise the USCIS' decision failed to mention, much less consider , Compass's Employee Handbook, Exhibit B at 101-106, which Mr. Palakurthi contracted to comply with,  Exhibit B at 100, and offered numerous examples of how Compass asserted its right to control his work activities by setting forth company policies with which he was required to comply.

37. Further, the agency merely mentioned, but did not at all consider, the other evidence submitted by Compass in support of its claim to have an employer-employee relationship with Mr. Palakurthi., including:

Compass's support letter;
• Copies of Compass's employment offer and the agreement with the beneficiary;
• Copy of the work itinerary;
• Copies of the beneficiary's pay statements;
• Copies of the letter from the end-client and the mid vendor;
• Copies of Compass's organizational chart and appraisal process;
• Copies of beneficiary's weekly status.
• Copies of Compass's support letter in response to RFE
• Copies of the older version of MSA between Compass and the mid-vendor;
• Copy of the another letter from the end-client;
• Copies of the beneficiary's employment with your company (sic)

Exhibit A at 4-5

38. The fact that a document is merely mentioned by an agency does not show it considered it.

*Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 80 (D.D.C. 2018).

39. Accordingly, the USCIS' decision is arbitrary and capricious in that it failed to consider any of the evidence submitted by Compass contradicting the agency's position that Compass lacked an employer-employee relationship with Mr. Palakurthi.

> B. THE USCIS' DECISION WAS ARBITRARY BECAUSE IT DID NOT RESPOND TO COMPASS'S ARGUMENT AS TO WHY IT DID HAVE AN EMPLOYER-EMPLOYEE RELATIONSHIP WITH MR. PALAKURTHI

40. As shown above, Compass presented a multipage argument as to why it did have an employer-employee relationship with Mr. Palakurthi inasmuch as it had the right to control his work activities. Exhibit D at 2-6.

41. The USCIS did not even acknowledge, much less respond to, that argument.

42. Where the agency did not respond to one or more of the plaintiff's arguments, which do not appear frivolous on their face and could affect the agency's ultimate disposition of the matter, its decision was arbitrary. *Frizelle v. Slater*, 324 U.S. App. D.C. 130, 111 F.3d 172, 177 (1997).

43.. Compass's argument that it had an employer-employee relationship with Mr. Palakurthi's because it had the right to control Mr. Palakurthi's work activities, far from being frivolous, is, as discussed below, consistent with  2 Supreme Court decisions, that of every circuit court of appeals that has addressed the issue, and the binding policy materials of the USCIS itself.

44. Further, inasmuch as the decision was premised solely upon Compass's purported failed to establish such a relationship, it certainly could affect the agency's ultimate disposition of its petition.

45.  Accordingly, the USCIS' decision is arbitrary and capricious in that it failed to consider a non-frivolous argument made by Compass which could affect the agency's ultimate disposition of Compass's petition upon Mr. Palakurthi's behalf.

C. THE USCIS' CONCLUSION THAT COMPASS DID NOT ESTABLISHT THAT IT WILL BE A UNITED STATES EMPLOYER"HAVING AN EMPLOYER-EMPLOYEE RELATIONSHIP WITH THE MR. PALAKURTHI AS AN H-1B TEMPORARY EMPLOYEE WAS ARBITRARY AND CAPRICIOUS BECAUSE IT WAS NOT SUPPORTED ANY EVIDENCE

46. As note above, the sole basis for the denial of this petition was the USCIS's conclusion that

"you have not established that you will be a 'United States employer; having an 'employer-

employee relationship' with the beneficiary as an H-1B temporary "employee." Exhibit A at 5.

47. *United States employer* means a person, firm, corporation, contractor, or other association, or organization in the United States which:

(1) Engages a person to work within the United States;

(2) Has an employer-employee relationship with respect to employees under this part, as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work of any such employee; and

(3) Has an Internal Revenue Service Tax identification number.

8 C.F.R. § 214.2(h)(4)(ii)

48. It is undisputed that Compass has engaged Mr. Palakurthi to work within the United States

and that it has an Internal Revenue Service Tax identification number.

49.  Further, the record contains unequivocal evidence that Compass "may" hire, pay, fire,

supervise, or otherwise control the work of Mr. Palakurthi.

50. Such evidence includes, for example, Compass's contract with Mr. Palakurthi, in which he

acknowledges that "he will work under the supervision and control of  Compass, Inc.

("Employer") throughout the time he is employed by Employer regardless of the location where

he physically provides services" and that only Compass "has hired, and will pay, and has the

ability to fire the Employee." Exhibit B at 77.

51. Although the decision makes that conclusory assertion that "the evidence is also insufficient

to:

• Demonstrate an employer-employee relationship at a third party work engagement at an off-site location;
• Establish your right to control when, where, and how the beneficiary performs the job with your client;", Exhibit  A at 5 , it fails to identify any evidence in the record to support either claim.

52. " (T)he substantial evidence provision of the APA, … is … no different from that demanded

by the arbitrary or capricious standard.". *Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of*

*Governors of Fed. Res. Sys.*, 240 U.S. App. D.C. 301, 745 F.2d 677, 686 (1984) (Scalia, J.).

53.  Not only is there no substantial evidence supporting the agency's decision in this matter,

there is none whatsoever.

54.  Accordingly, the Decision is arbitrary and capricious.

## II. THE DECISION DENYING MR. PALAKURTHI'S CHANGE OF STATUS WAS ALSO ARBITRARY AND CAPRICIOUS

55. The denial of Mr. Palakurthi's application for change of nonimmigrant status was likewise

arbitrary and capricious in that it was premised entirely upon the arbitrary denial of Compass's

petition.

## III. THE USCIS HAS UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED A PROPER ADJUDICATION OF COMPASS'S PETITION AND APPLICATION FOR CHANGE OF MR. PALAKURTHI'S NONIMMIGANT STATUS

56. 5 U.S.C. § 706 provides in relevant part that in actions under the Administrative Procedure

Act "The reviewing court shall—

**(1)** compel agency action unlawfully withheld or unreasonably delayed;".

57. By virtue of its arbitrary denial of  Compass's petition upon behalf of Mr. Palakurthi, and his

application for change of nonimmigrant status, the USCIS has unlawfully withheld and

unreasonably delayed a decision which is not arbitrary and capricious, an abuse of discretion and/or not in accordance with law.

WHEREFORE this Court should order USCIS to issue a decision which is neither arbitrary, capricious, an abuse of discretion, nor not in accordance with law, within 15 days of its Order holding unlawful and setting aside the decision in this matter.

Respectfully submitted this 18th day of February, 2020

*s/Michael E. Piston*
Michael E. Piston (MI 002)
Attorney for the Plaintiffs
Transnational Legal Service, PC
1955 West Hamlin Rd., Ste 100
Rochester Hills, MI 48309

646-845-9895